UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARR A. HARRIS,<br><br>              Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>              Defendant. | ) Case No. CV 05-0077-RC<br>)<br>)<br>)<br>) OPINION AND ORDER<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff Starr A. Harris filed a complaint on January 31, 2005, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on July 1, 2005, and the parties filed a joint stipulation on September 28, 2005.

**BACKGROUND**

**I**

On January 4, 2003, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since August 1, 1998, due to injury to her right arm. Certified Administrative Record ("A.R.") 47-50, 61.

The plaintiff's application was initially denied on May 16, 2003, and was denied again on July 17, 2003, following reconsideration. A.R. 23-35. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge F. Keith Varni ("the ALJ") on March 29, 2004. A.R. 36-37, 381-95. On April 20, 2004, the ALJ issued a decision finding plaintiff is not disabled. A.R. 10-20. The plaintiff appealed this decision to the Appeals Council, which denied review on December 2, 2004. A.R. 4-8.

**II**

The plaintiff, who was born on October 10, 1961, is currently 45 years old. A.R. 47, 384. She has a tenth-grade education, has taken some computer classes, and has previously worked as a school bus driver. A.R. 62, 67.

On April 4, 1997, plaintiff, who is right-handed, injured her right arm at work while lifting a child in a wheelchair. A.R. 105-06, 290, 385-86. Various physicians diagnosed plaintiff as having right arm carpal tunnel syndrome, de Quervain's disease,[1] radial nerve neuropraxia, and reflex sympathetic dystrophy,[2] among other

---

[1] de Quervain's disease consists of "painful tenosynovitis [inflammation of a tendon sheath] due to relative narrowness of the common tendon sheath of the abductor pollicis longus and the extensor pollicis brevis." Dorland's Illustrated Medical Dictionary, 514, 1798 (29th ed. 2000).

[2] Reflex sympathetic dystrophy consists of "a series of changes caused by the sympathetic nervous system, marked by pallor or rubor [redness], pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture, or injury to nerves or blood vessels." Id. at 560, 1588.

2

1  conditions, and she received extensive medical treatment, including
2  multiple surgeries on her right arm.  A.R. 105-348.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), may review the Commissioner's decision denying plaintiff disability benefits to determine whether the decision is supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006); Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v.

Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). In this case, since plaintiff's Title II disability insured status expired on December 31, 2003,[3] A.R. 19, plaintiff must show she was either permanently disabled or subject to a condition which became so severe as to disable her prior to that date. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Armstrong v. Commissioner of the Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the

---

[3] The plaintiff does not challenge the ALJ's determination that she last met the Title II disability insured status requirements on December 31, 2003.

4

Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. (Step One). The ALJ then found plaintiff has "reflex sympathetic dystrophy, degenerative changes in the lumbar spine, and [a] mood disorder secondary to [a] general medical condition[,]" which are "in combination" severe impairments (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is unable to perform her past relevant work. (Step Four). Finally, the ALJ found plaintiff can perform a significant number of jobs in the national economy; therefore, she is not disabled. (Step Five).

**IV**

The claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, exertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff retains the RFC to perform a "significant range of light work."[4] A.R. 19. However, plaintiff contends the

---

[4] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it

ALJ's RFC finding is not supported by substantial evidence because the ALJ did not properly consider the statements of her husband, Juan Bravo.

On February 5, 2003, Bravo completed a "daily activity questionnaire" in which he stated that plaintiff was very depressed and plaintiff complained that the pain in her right arm was "really bad." A.R. 82-87. In the questionnaire, Bravo also reported he or plaintiff's son did almost all of the household chores and cooking since plaintiff was only able to make herself something easy to eat, such as a bowl of cereal or a microwave meal, could only do simple household chores with her left hand, such as dusting with a feather duster, and she had a lot of trouble finishing chores, and he helped plaintiff with other activities, such as buttoning her clothes and tying her shoes. A.R. 82-84, 86. Bravo also stated in the questionnaire that plaintiff's pain caused her a lot of difficulty sleeping, and she got only 4-5 hours of sleep each night -- usually sleeping in a chair with her right hand on a pillow because her hand cannot lie flat. A.R. 82-83. Furthermore, Bravo indicated in the questionnaire that plaintiff could not grasp items for long in her right hand, did not write very much because of her hand pain and stopped painting and drawing. A.R. 84, 86. Finally, Bravo stated plaintiff was always mad and depressed, her concentration "a lot of times [was] gone" and plaintiff felt like giving up. A.R. 86.

---

involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Thus, daily activity questionnaires by nonparties are "an important source of information about a claimant's impairments[.]" Regennitter v. Commissioner of the Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999); Schneider v. Commissioner of the Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000); cf. Smolen, 80 F.3d at 1289 ("[T]estimony from lay witnesses who see the claimant every day is of particular value. . . ."). Here, however, the ALJ failed to address Bravo's daily activity questionnaire, and this failure was legal error. Stout, 454 F.3d at 1054; Schneider, 223 F.3d at 975.

Nevertheless, the Commissioner contends that the ALJ's error in failing to consider Bravo's statements was harmless. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless."). In determining whether the ALJ's error in failing to discuss Bravo's daily activity questionnaire was harmless error, this Court "cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056. Here, the Court concludes the ALJ's error was harmless for several reasons.

First, Bravo's comments merely repeat statements plaintiff made at the administrative hearing and in daily activity questionnaires she

completed February 5 and June 16, 2003. Compare A.R. 82-87 with A.R. 76-81, 97-102 (daily activity questionnaires), 383-95 (testimony). Yet, the ALJ found plaintiff's complaints "regarding her limitations" are not credible, see A.R. 17, 19, and, plaintiff does not challenge the ALJ's negative assessment of her credibility. See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[T]he ALJ's failure to give specific reasons for disregarding [lay witness] testimony is inconsequential" when ALJ properly rejected claimant's credibility and "the same evidence supports discounting the [lay witness] testimony. . . ."); Orcutt v. Barnhart, 2005 WL 2387702, *9-10 (C.D. Cal.) (Any error in failing to specifically discuss third-party questionnaire was harmless "when that testimony does little more than corroborate plaintiff's testimony and adds nothing of substance to the record. . . .").

Second, plaintiff only identifies one statement by Bravo that is arguably inconsistent with the ALJ's RFC determination, i.e., that plaintiff's concentration "a lot of times is gone." See Jt. Stip. at 3:2-24. However, this statement conflicts with the medical evidence from every medical examiner who evaluated plaintiff's mental status.[5]

---

[5] See A.R. 107-08 ("Examination revealed that the patient was alert and oriented times three (person, time and place). . . . Judgement and calculations were fair. Memory, recent and remote, was intact."), 184 ("Mental status normal."), 244 ("Patient is alert, coherent and well oriented in all spheres. [S]peech and memory are intact."), 336 ("The claimant is alert, well-oriented, has good memory function, calm mood and behavior, and no communicative disorder."), 342-47 (psychiatric evaluation noting, among other findings, that plaintiff's "[a]ttention span and concentration are intact[,]" she "is able to do serial 3s[,]" her "[s]hort-term and long-term memories are intact[,]" and she was able to perform simple math, and concluding plaintiff's

8

See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (ALJ's failure to discuss lay testimony conflicting with available medical evidence is harmless error). Furthermore, apart from the lay testimony challenge discussed herein, plaintiff has not challenged the ALJ's Step Five finding, which relied on evidence provided by "[a] State Agency vocational specialist[,]" and there is simply no evidence from which this Court can infer that Bravo's statement regarding plaintiff's concentration would interfere with the type of work the vocational expert opined plaintiff can perform. See Frost v. Barnhart, 314 F.3d 359, 361 (9th Cir. 2002) (ALJ did not err in failing to properly consider claimant's sister's testimony because "there is no reason to assume that these symptoms would interfere with claimant's ability to do the kind of simple work that the ALJ suggested."). For all these reasons, the ALJ's error in failing to directly address Bravo's daily activity questionnaire was harmless error.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  August 31, 2006              /s/ Rosalyn M. Chapman
                                    ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

---

"occupational and social functioning is not severely impaired" and her "concentration, persistence and pace are not severely impaired.").

R&R-MDO\05-0077.MDO
8/31/06

9